Tatem Wofford v. Commissioner.
Wofford v. Commissioner
Docket Nos. 19857, 20927.
United States Tax Court
1951 Tax Ct. Memo LEXIS 156; 10 T.C.M. (CCH) 692; T.C.M. (RIA) 51230; July 31, 1951
*156 C. Leo DeOrsey, Esq., 204 National Savings & Trust Bldg., Washington 5, D.C. and Harry Friedman, Esq., for the petitioner. S. Earl Heilman, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined deficiencies in income tax against petitioner as follows: Docket No.
Year
Amount
19857
June 30, 1941
$ 26,357.63
June 30, 1942
26,449.50
20927
June 30, 1944
172,018.67
The questions are whether the income from the operation of a resort hotel at Miami Beach, Florida, is taxable to the petitioner alone, or for the fiscal year ending June 30, 1941, taxable equally to petitioner and his wife, or for the fiscal years ending June 30, 1942 and June 30, 1944, to petitioner, his wife, and a trust created by them for the benefit of their daughter. There are minor issues covering the deductibility of some miscellaneous expenditures. Findings of Fact The petitioner is a resident of Miami Beach, Florida. He filed his income tax returns for the years here in question with the collector of internal revenue for the first district of Florida. Petitioner and his brother, John B. Wofford, as legatees *157 under the will of their mother, who died in 1932, received all of the stock, 2,000 shares, of the Wofford Hotel Corporation and a residence in Miami Beach. There was no division of the properties between them and the operation of the hotel was continued by the corporation. On November 4, 1936, John Wofford and his wife, Olive, filed a suit in a Florida court, asking that the corporation be declared to be trustee of the hotel property and the residence, and that all of the property be sold and a division of the proceeds among the beneficial owners made. Petitioner, in the meantime, had transferred one share of his hotel corporation stock to his wife, Patricia, retaining in his own name 999 shares. John had transferred 20 shares of his stock to his wife, Olive, retaining in his own name 980 shares. On June 28, 1937, the Florida court, finding it impracticable to divide the properties between the parties, entered an order directing a special master to collect certain moneys then held by petitioner, to sell the hotel and residence at public sale and to distribute the proceeds among the parties in proportion to their respective stock holdings. Pursuant to the order entered, the master *158 collected the money in question and took the necessary steps for the public sale of the properties on December 6, 1937. On December 2, 1937, he distributed the cash collected to petitioner and his wife and John and his wife in the proportions in which the stock of the hotel corporation was held. On December 2, 1937, petitioner executed, acknowledged and delivered a written instrument to his wife, Patricia, reciting a conveyance to her of an undivided 499/2000 interest in the hotel and residence property; 499 shares of stock in the hotel corporation; and a 499/2000 interest in the court decree of June 28, 1937, the recited consideration being love and affection. The public sale of the hotel property and the residence was had on December 6, 1937, at which John Wofford and his wife were the high bidders. Their bids were $230,000 for the hotel property and $26,500 for the residence. Payment was made therefor in cash and notes, John and his wife being credited on the purchase price with the amount of their interests in the proceeds. The effect, income-tax-wise, on petitioner of the sale of the properties and the division of the sales proceeds, together with the cash above-described, was *159 litigated in this court and was reported in the case of . It was there held that the assignment of December 2, 1937, by petitioner, was in effect an assignment of income to be received by petitioner in the future, which, under , would not relieve him from liability for the tax thereon, and was not an assignment by him of an interest in the properties themselves. On January 20, 1938, the master delivered to the clerk of the court for petitioner and his wife cash amounting to $35,043.90 and notes and mortgages in the aggregate amount of $89,775, all of which the clerk paid over and delivered to petitioner and his wife. The cash was placed by them in a safety deposit box standing in their joint names. For several years prior to the sale of the hotel property and the liquidation of the corporation, petitioner had acted as manager of the hotel. During that period, his wife Patricia also was active in its operations, and had gained experience as a hotel hostess and in the actual mechanics of hotel operation. Petitioner and his wife were desirous of again engaging in the hotel business, and almost immediately *160 after the liquidation of the Wofford Hotel Corporation, they began checking possible hotel sites and working on plans for the building of a new hotel. Both petitioner and his wife participated in the selection of a desirable site and in the bargaining leading to the purchase of property on which the new hotel was to be built, and each of them, with an arthitect, contributed to the planning of the new structure. The land for the new hotel was purchased with the funds they had received upon the liquidation of the Wofford Hotel Corporation. They took title to the property as joint owners. Money for the construction of the hotel was borrowed an a mortgage on the property was given by petitioner and his wife as security for the loan. Patricia participated in the financing transactions, and was jointly obligated with petitioner on the mortgage. They both participated in the selections of the furnishings for the hotel, in the purchase of linens, china, silver and other materials and in the establishment of the hotel rates. The new hotel was named "The Tatem" for petitioner or his father. The name was selected by petitioner's wife. The construction and furnishing of the hotel were completed *161 in time for operation during the winter season of 1938-1939. Under date of January 5, 1939, the petitioner and his wife filed a formal statement with The Miami Beach First National Bank, Miami Beach, Florida, advising that they were sole owners of the partnership operating under the name of The Tatem; that the bank in question had been agreed upon and designated as depository for the funds of the partnership; that it was authorized to accept, honor and pay, until revocation of authority, all checks, drafts and other orders for the payment of withdrawal of money, "when signed in the name of the partnership" by Tatem Wofford or Patricia Wofford. This account was maintained without change throughout all of the years here under consideration. When petitioner and his wife married on May 31, 1929, her separate estate amounted to $135. Her father gave them a lot as a wedding present and petitioner's mother gave them $5,000 toward the construction of a house. After The Tatem was completed, the house was rented for a few seasons and was then sold for approximately $10,500. The proceeds of the sale were applied on the hotel mortgage. After The Tatem was put into operation, the petitioner *162 and his wife continued jointly to handle and supervise the affairs and problems incident to its operation. They both were active in handling the hotel correspondence, in paying the bills and in the writing of checks to cover the expenses of its operations. One of Patricia's particular activities was the planning of the hotel menus. She acted as hostess at hotel functions during the season and on various holiday occasions. Petitioner was frequently away from Miami Beach on business and when he was absent she assumed full responsibility for operation of the hotel. She conducted herself at all times as a coproprietor of the hotel, and was so considered and accepted by the hotel employees and the others. Working under petitioner and his wife, was a hotel manager. He performed the day-to-day duties that might be expected of a hotel manager but at all times was subject to the supervision and direction of both petitioner and his wife. Pursuant to the deposit agreement dated January 5, 1939, with the Miami Beach First National Bank, the business proceeds were deposited in a single account in the name of The Tatem, on which both petitioner and his wife wrote checks. This was their only bank *163 account, and their money needs, both business and personal, were met by withdrawals therefrom. On the books of the business one account in the name of "Tatem W. and Patricia Wofford" was maintained. Withdrawals by each of them were shown thereon by appropriate entries. The petitioner and his wife did not execute a formal or written agreement to operate the hotel business as partners. On October 11, 1941, the fictitious name "The Tatem" was registered in the office of the clerk of the Circuit Court of Dade County, Florida. The affidavit attached thereto stated that Tatem Wofford, Jr., and Patricia Wofford each owned a one-half interest in the business. The license to operate the hotel was issued by the State Hotel Commission of Florida to Tatem and Patricia Wofford. Contracts for insurance covering the hotel property and its operating activities were also taken in their joint names. In addition, petitioner and his wife had an oral agreement that they were to operate, and were operating the hotel as partners. By warranty deed, petitioner and Patricia Wofford, on December 31, 1941, conveyed to themselves, as trustees for Margaret Ora Wofford, their daughter, who was then 12 years *164 of age, "an undivided one-third (1/3) interest in the following described real estate situated in the City of Miami Beach, County of Dade and State of Florida, towit: "Lot Two (2) and South Seventy-Five (75) feet of Lot One (1) in Block Thirty-Nine (39), of the Ocean Front Property of The Miami Beach Improvement Company, according to plat thereof recorded in Plat Book 5, Pages 7 and 8 of the Public Records of Dade County, Florida." The property described was the land and buildings in which The Tatem Hotel operations were conducted. As to rights of the beneficiary, the deed contained the following: "The interest of each and every beneficiary hereunder and of all persons claiming under them or any of them shall be only in the earnings, avails and proceeds arising from the sale or other disposition of said real estate, and such interest is hereby declared to be personal property, and no beneficiary hereunder shall have any title or interest, legal or equitable, in or to said real estate as such, but only an interest in the earnings, avails and proceeds thereof as aforesaid." The grantors expressly reserved unto themselves the power to increase the mortgage indebtedness to any *165 amount which in their discretion they deemed meet and proper, "without the joinder or consent of the grantees or the beneficiaries." The deed also carried a provision stating that the grantees had the right to convey the property "with or without consideration." On the same date, petitioner and his wife executed a written declaration of trust, declaring that they had received the property so conveyed as trustees and held such property in trust, their daughter, Margaret Ora Wofford, being the beneficiary. The property described was the land and buildings, namely, the real estate, in which The Tatem hotel operation was conducted. The trust instrument provided that the trustees were to receive and collect the principal and income of the trust estate and, after making the payments and deductions therein provided, to pay or accumulate, use, invest, hold, apply, and distribute the same to or for the use of the beneficiary. It was then declared that the entire net income received from the trust estate, "as it represents an undivided one-third interest in an operating business and as such may not be available for distribution," should be used as thereafter specified, which, in short, was, *166 after payment on notes and other indebtedness encumbering the trust estate, to be accumulated for subsequent distribution to or use for the benefit of Margaret Ora Wofford. The trust was to continue until the beneficiary should attain the age of 30 years. The instrument gave the petitioner and his wife extremely broad powers of control and management. It was then provided that title, both legal and equitable, to the trust estate was vested in the trustees and that the beneficiaries took no estate or interest therein and that their interest was personal property only, consisting of the right to enforce the due performance of the trust. It also contained a provision similar to that appearing in the warranty deed, to the effect that the trustees "expressly reserve unto themselves the right and power to increase the mortgage indebtedness now owed or hereafter to be owed, to any amount which in their discretion they deem meet and proper, without the joinder or consent of the beneficiaries." The action taken was in part precipitated by the fact that petitioner had become interested in another woman and was seeking a divorce from Patricia, and because of the suggestion by an insurance salesman *167 that such conveyance might serve a purpose of reducing subsequent income and inheritance taxes. Before signing the instruments in question, Patricia went to a lawyer, explaining the situation to him with respect to her relations with her husband and what she wanted to do for her daughter, but that she wanted to have 50 per cent control. The lawyer, after reading the documents, told her it was all right for her to sign them. Pursuant to petition filed in the Circuit Court of Dade County by the petitioner and his wife, individually "and as Trustees for Margaret Ora Wofford, a minor", the court on June 23, 1947, entered an order declaring, among other things, that the warranty deed of December 31, 1941, was in effect a conveyance in fee simple to themselves as trustees of an undivided one-third interest in the real estate described. The provision to the effect that petitioner and his wife as trustees had the power to convey the property without consideration was stricken. As to the declaration of the trust, it was similarly held that the effect was that petitioner and his wife as trustees held for the use of their minor daughter an undivided one-third right, title and interest to the *168 real property described in the deed; that the trust was to continue as an active trust until the daughter should attain the age of 30 years, when the trustees were to deliver and convey to the beneficiary full and complete legal title in and to the undivided one-third interest, "together with all undistributed net income and all funds and other assets properly accruing and belonging to the said beneficiary's undivided one-third (1/3) fee simple interest in said lands." It was further held that under the trust instrument the beneficiary had and owned the equitable or beneficial interest in and to the property conveyed and that the provisions of the trust instrument indicating otherwise were in conflict with the plain and evident intent of the instrument as a whole. Federal gift tax returns were filed by petitioner and his wife, valuing the property conveyed by each at $34,000. On examination of the gift tax returns, the respondent determined that the value of each gift was $41,500. Deficiencies determined on the basis of such values were agreed to and the amounts thereof were paid. An account in the name of "Tatem and Patricia Wofford, Trustees for Margaret Ora Wofford" was set *169 up on the hotel books. The entries made thereon included an original credit of $70,000, the crediting of one-third of the profits from the hotel business and debits for income tax and insurance premium payments. No partnership agreement for entry of the trust into the hotel business was entered into by petitioner and his wife, or either of them, as individual owners or as the trustees. The affidavit which had been filed with the Florida court listing the fictitious name "The Tatem" and showing petitioner and his wife as equal owners thereof, was not amended to record any reported change in ownership. The partnership bank account was continued as before. During the fiscal year ending June 30, 1941, The Tatem paid legal expenses of $1,550, income taxes of $535.75 and interest of $115.19 in connection with the Wofford Hotel Corporation. In the same year The Tatem incurred further legal expenses amounting to $750 in license litigation relating to the operation of the hotel bar. For the year ended June 30, 1942, accounting fees of $500 were paid by The Tatem in connection with the Wofford Hotel Corporation liquidation. Liquor purchases of $2,500 over and above those shown on the petitioner's *170 return were made in the fiscal year ending June 30, 1944. In his income tax return for the fiscal year ending June 30, 1941, petitioner reported one-half of the profits from the hotel's operations as his distributive share of the income of a partnership consisting of himself and his wife. In his income tax return for the fiscal years ending June 30, 1942, and June 30, 1944, petitioner reported one-third of the profits from the hotel operations as his distributive share of the income, treating the remaining two-thirds as belonging one-third each to his wife Patricia and to the Margaret Ora Wofford Trust. In his determination of the deficiency herein, the respondent has included in petitioner's income the entire profits from the hotel operation for the years in question. The petitioner and his wife Patricia intended to form a partnership for the operation of The Tatem on a fifty-fifty basis, and for the fiscal years June 30, 1941, 1942 and 1944, the hotel business was so owned and operated. They did not, individually or as trustees, have any intention to operate the hotel during the fiscal years ending June 30, 1942, and 1944, with the Margaret Ora Wofford Trust as a partner. *171 Opinion The major questions are whether the income from the operation of The Tatem is taxable (1) for the fiscal year ended June 30, 1941, equally to the petitioner and his wife, Patricia Wofford, either as partners or as tenants by the entirety, and (2) for the fiscal years ended June 30, 1942, and June 30, 1944, equally between the petitioner, his wife, and petitioner and his wife as trustees for their daughter, Margaret Ora Wofford, or is taxable equally to petitioner and his wife, as claimed for the fiscal year ended June 30, 1941, or (3) whether the income for all three years is taxable to petitioner, as claimed by the respondent. It is our opinion, and we have found as a fact, that as to all three years, petitioner and his wife did intend to enter into a partnership, with equal interests therein, for the purpose of operating a hotel business at Miami Beach, Florida, known as The Tatem. In our judgment, the facts as found clearly show that they carried out that intention and did so operate the hotel business during the years in question, and we do not feel that anything is to be gained by further discussion or recapitulation of the facts so found. It is accordingly our conclusion *172 that the petitioner and his wife, for the years in question, were the owners and equal partners in the operation of the hotel ; ; and . As to the status of the Margaret Ora Wofford Trust, the position of the petitioner is equivocal. In some parts of his argument, he seems to claim that the trust was a member of a three-way partnership for the fiscal years ended June 30, 1942, and June 30, 1944, with himself and his wife. At other places, the implication in the argument is that property of the trust was used in the hotel operation and, by reason of that fact, it was entitled to some return thereon. At the same time, without showing what might be a proper allowance for use by the partnership of the trusts' interest in the hotel real estate on a quantum meruit or any other basis, he jumps to the conclusion that one-third of the profits from the hotel operation is, as a matter of course, the income of the trust. Supporting that claim, petitioner makes the argument that the hotel income was all produced by the use of capital, and *173 not through the rendition of personal services of petitioner and his wife individually, or as trustees for the trust. This later contention, which is more of a statement of conclusion than an argument, runs directly counter to the claims made by the petitioner elsewhere in his brief in support of his contention that he and his wife were partners in the hotel operation. In support of that claim, he strongly argues, and, in our opinion, argues effectively, that the income from the hotel operation was attributable to a very substantial degree to the services rendered by Patricia Wofford, his wife. That petitioner and his wife, as trustees for their daughter, Margaret Ora Wofford, were not partners in the partnership operating The Tatem and did not, as such trustees, participate in the operation of the hotel business, is, we think, clear from the facts. They did declare themselves to be trustees for their daughter and did execute the warranty deed purporting to convey, or conveying, a one-third interest in the hotel real estate to themselves, as trustees. They were personally at odds with each other, and an insurance salesman had made the suggestion that by creating the trust they could *174 save themselves substantial amounts in income and inheritance taxes. It was also true, we think, that they did have a common interest in the welfare of their daughter. While in the trust instrument there was a statement that the trust estate represented an undivided interest in an operating business, on the other hand, the trust instrument and the warranty deed rather plainly indicated that the conveyance made was limited to an undivided one-third interest in the real estate on which the hotel operation was carried on, and was not a conveyance of any part of the hotel operation itself. It is also significant to note that in 1947, when, on the joint petition of the petitioner and his wife, a Florida court entered a declaratory order with respect to the instruments in question, it went no further than to find and declare that a one-third interest in fee simple to the real estate had been conveyed by the petitioner and his wife to themselves as trustees for their daughter. In the warranty deed and in the trust instrument as originally drawn and executed, it was declared that the beneficiary had no interest, legal or equitable. The deed also provided that the petitioner and his wife, *175 as trustees, had the power to convey the property with or without consideration. As grantors, they expressly reserved to themselves the right and power to increase the mortgage indebtedness to any amount they might deem meet and proper, and without joinder or consent of themselves, as grantees, or of the beneficiary. The testimony of Patricia Wofford indicates that while she was willing to take steps for the purpose of saving income and inheritance taxes, and was interested in doing something for her daughter, she was likewise interested in seeing that she reserved to herself a full 50 per cent control, and before signing the warranty deed and declaration of trust as drawn, she sought the advice of her lawyer for assurance that they did not take such control from her. After the lawyer had read the two instruments and had assured her that they did not deprive her of the desired control, she signed them. It is true that in 1947 petitioner and his wife petitioned the Florida court to declare the intent and meaning of the warranty deed and declaration of trust to be otherwise than indicated on the face thereof. While the order of the court did declare that the parties intended by the *176 execution of the instruments to convey a one-third interest in fee simple to the hotel real estate to themselves as trustees for their daughter, Margaret Ora Wofford, and declared various of the provisions of the instruments which indicated otherwise as being in conflict with the intent of the parties, there is no showing whatever that the proceeding was an adversary proceeding. See and compare . There is some indication that an attorney ad litem for their daughter was named, but there is nothing present in the record to indicate that his action with respect thereto was anything more than formality. Furthermore, ownership in fee of an undivided one-third interest in the hotel real estate would not in and of itself make the trust a member of the partnership or the owner of any part of the income from the hotel operation. After considering the evidence, it is our conclusion, and we have found, that there was no intent on the part of the petitioner and his wife as individuals, or on their part as trustees, that the trust for their daughter should participate in the partnership business of operating the hotel Tatem. We are accordingly unable *177 to find that the trust is taxable on any part of that income. Whatever may be done, or may have been done, by petitioner and his wife toward setting over part of the income from the hotel operation to themselves as trustees for their daughter, the income in question was first that of the partnership and as such was taxable to them as partners. Compare . A number of minor issues covering the deductibility of various miscellaneous expenditures were raised by petitioner in his petition. Most of them were settled by stipulation or were waived by petitioner on brief. Those remaining are expenditures made for income taxes, interest, and legal and accounting services in the fiscal years June 30, 1941, and June 30, 1942, as transferee of the Wofford Hotel Corporation, an attorney's fee of $750 paid in the fiscal year 1941 to cover services rendered in license litigation relating to the operation of the hotel bar, and $2,500 paid for liquor in the fiscal year 1944 over and above the purchases reported by petitioner on his return. The issue as to the liquor purchases is disposed of by our findings of fact, and the respondent now concedes that the legal *178 fee of $750 is deductible. With respect to the expenditures made as transferee of the Wofford Hotel Corporation, the respondent concedes that the interest payment of $115.19 made in the fiscal year 1941, is also deductible. As to the legal and accounting fees and the income taxes paid by petitioner as transferee of the Wofford Hotel Corporation, the respondent contends that they were in effect capital losses. He concedes that , is in point and under it the decision would go for petitioner. It is his position, however, that that case was wrongly decided and should not be followed. He has advanced nothing here that was not considered in that case. His contention is accordingly rejected. Decision will be entered under Rule 50.